## GAUFF'S APPEAL.

Where a married woman receives her note (which was not binding upon her) as part of her dividend in her brother's assigned estate, she cannot recover the money again.

The receipt of a married woman for a distributive share of an assigned estate is valid, without joining her husband.

Appeal from Common Pleas of Northampton County. No. 101 January Term, 1881.

Catharine E. Gauff presented her original petition on September 29th, 1879.

It represented that on the 6th day of December, A. D. 1875, the auditor's report on the first account of Paul Kleppinger, assignee of James W. Kemmerer for benefit of creditors was filed, in which report the sum of $730.12 was distributed to the petitioner as her *pro rata* share of the balance in the hands of said assignee. That the said report was afterwards, to wit, on the 31st day of December, A. D. 1875, confirmed. That said Paul Kleppinger afterwards paid to the petitioner the sum of $165.12 and no more, leaving a balance of $565 still due and unpaid. The petitioner prayed the Court to grant her a writ of execution in the nature of a writ of *fieri facias* against the said Paul Kleppinger and his effects to enforce the

payment to the petitioner of the said balance of $565, with interest from the first day of January, A. D. 1876.

The Court on December 4, 1879, dismissed her petition in the following opinion per

MEYERS, P. J.:

The distributive share of Catharine E. Gauff is $730.12. On the 4th of January, 1876, she gave a receipt to Paul Kleppinger, assignee of Kemmerer, on a schedule of distribution, which was headed with a receipt, viz:

"Received of Paul Kleppinger, assignee of James W. Kemmerer and wife, the amount opposite our respective names, being in full of the several sums distributed to us of the estate of James W. Kemmerer, as per report of William Beidleman, auditor upon the account of said Kemmerer's assignee."

At the date of signing the receipt, the assignee held a note for $500 given by Catharine E. Gauff to James W. Kemmerer, who is her brother. Kemmerer was surety for her husband on a note of like amount held by Jeremiah Roth, and the above note was given by Mrs. Gauff to Kemmerer as collateral security. At the time when Mrs. Gauff gave the receipt to Kleppinger he paid her $165.12, and the balance of her distributive share, viz: $565, was applied toward the payment of the note. On the same day, according to the receipt of Jeremiah Roth on the schedule of distribution, $490.30 was paid by Kleppinger to Roth on whose claim Kemmerer was surety as already stated. Mrs. Gauff herself testifies to the same effect. Mrs. Gauff being a married woman at the time she gave the note to Kemmerer, was not legally liable to pay the same. But she was not bound to plead her coverture. The uncontradicted evidence is that at the time she gave her receipt for her distributive share, Kemmerer was present that the note in question was produced, that he explained to her how much the note and interest amounted to, which was paid to her by Kleppinger. He also testifies that he believes the note was delivered up to her. To the same effect is the testimony of Mr. Kleppinger, though he does not recollect whether the note was delivered up or not. Mrs. Gauff was not bound to receive the $165.12 in cash and give a receipt in full for her distributive share. The retention, therefore, of the amount of this

note by Kleppinger out of the distributive share of Mrs. Gauff was by her express agreement and assent. The receipt of $165.12 in cash and executing a receipt for the full amount of said share was in fact and in law a payment of said note to Kleppinger, who, as assignee of Kemmerer, was entitled to receive it.

Afterward, Mr. Kleppinger filed a second account as assignee of Kemmerer, in which he charged himself *inter alia* with the amount of this note and interest, and the money was subsequently distributed and paid by him to Kemmerer's creditors. After the expiration of nearly four years, Mrs. Gauff comes in the Common Pleas and prays the Court to award her a process against Kleppinger to enforce payment of her distributive share, less the amount paid to her in cash. We think she is too late. The Court having found as a fact that she paid the note in question by applying a portion of her distributive share, she cannot now be permitted to plead coverture. It is possible that she was ignorant of her rights at the time she paid the note in the manner hereinbefore indicated. But mere ignorance of the law will not excuse her in the absence of fraud, imposition or undue influence on the part of Kleppinger. Neither is the arrangement which she made in respect to said note at the time when she gave the receipt, void by reason of her coverture. This arrangement was enacted and completed as effectually as if she had paid off the note in money ; and it would scarcely be pretended that she could be relieved against such payment by reason of her coverture. Moreover, Kleppinger was misled by her acts, in this, that he subsequently charged himself in his second account with the amount of this note, and upon distribution made by the auditor, the same was paid by Kleppinger to Kemmerer's creditors.

We therefore hold that both on the ground of payment and estoppel, Mrs. Gauff has no standing in Court.

And now, Dec. 4, 1889, petition dismissed at the cost of the petitioner.

---

On February 9th Catharine E. Gauff's supplemental petition was presented and filed, representing, after stating the

proceedings on the original petition, that the petitioner was taken by surprise when Mr. Kleppinger produced what purported to be a receipt in full of her distributive share, and could not then account for it, as she had not been aware that she had signed such a receipt; that she since made inquiry into the matter and discovered the following facts, to wit: That James W. Kemmerer owed her $839.21 as administrator of her father's estate; that the auditor on Kleppinger's first account as assignee of Kemmerer, distributed to her the sum of $730.12; that when Kleppinger came to her house in company with James W. Kemmerer, who was her brother, to pay her share, Kemmerer, in the presence of Kleppinger, produced her promissory note given to him to indemnify him as security on her husband's note to Jeremiah Roth, and told her that she was entitled to receive only $165.12, being the balance of her share after deducting her note; that she was then ignorant of the true state of her share in said estate and of her liability on her note, and that by the undue influence of her brother and Mr. Kleppinger, in both of whom she had the utmost confidence, she was induced to believe that she was bound to pay her note and could not recover the balance of her share. The petition further represents that the petitioner when she signed her name to the receipt in question believed that she was signing a receipt only for the amount actually paid her; that the receipt was not read nor explained to her before signing it; that she never, either individually or in conjunction with her husband, who was sick during all this time, voluntarily relinquished the balance of her share to anyone, but was restrained from demanding it from the said assignee by the influence of her brother and the assignee, who induced her to believe that she could not by law recover it.

The petition further represents that the assignee paid on note of the husband of the petitioner on which her brother was security only $490.30, and she claims that this sum, even if she had been liable on her note, should have been deducted from the whole amount which Kemmerer was indebted to her, to wit: $839.21, and the balance of $348.91 instead of $165.13 should have been paid to her, at least, and that she was thus

imposed upon and made to pay $183.79 more than was due on her note.

The petitioner prayed for a rehearing and that the decree dismissing her original petition be reversed and set aside, and that a decree be made as prayed for in her original peti- tion, &c.

On November 1st, 1880, the Court dismissed the supplemental petition in the following opinion per

MEYERS, P. J.:

At the time of the assignment by Kemmerer, he as admin istrator of the estate of James W. Kemmerer, deceased, was indebted to Catharine E. Gauff her distributive share in said estate amounting to $839.21. The auditor on the first account of Kleppinger as assignee, distributed to Mrs. Gauff $730.12. When the application was first heard, we found substantially the following facts and conclusions of law, viz: that Kleppinger as assignee paid Mrs. Gauff in cash $165.12, and by her express agreement and assent Kleppinger retained and applied $565, the balance of the share distributed to her, to the payment of the promissory note for $500 and interest, held by Kemmerer against her; that she executed and delivered to Kleppinger a receipt in full for said share, and that such receipt was in fact and in law a payment of the note to Kleppinger.

On the application for a rehearing it is contended that Mrs. Gauff is not bound by the receipt, because her husband did not join in it. The law undoubtedly is that a married woman cannot, except when she is allowed by statute, assign or transfer her choses in action, &c., without the consent of her husband. Is she legally competent to give a receipt upon the payment to her of money to which she is entitled as her separate property? It is contended that she is not under the Act of 11th April, 1848, P. L. 536, and that her power to do so respecting legacies and distributive shares in estates of decedents was given by the 4th Section of the Act of 11th April, 1856, P. L. 315, I doubt very much whether the latter act was intended to meet the case of a mere receipt or release by a

married woman to an executor or administrator for a legacy or distributive share paid to her.

The purpose of this Act is to enable a married woman to give a refunding bond "and also to execute all such other instruments, and to perform all such other acts, as may by law be necessary to be done, or may be lawfully required by the executor or administrator upon the payment to her of the moneys to be distributed as aforesaid, with the same affect, for the intent and purpose of binding her separate estate, as if she were sole and unmarried."

It is evident that the instrument in writing to be executed and the acts to be performed by a married woman, contemplated by the statute, are such which in their intent and purpose are to bind her separate estate. The instruments and acts must necessarily embrace matters of contract or covenant against which she could not plead her coverture. How can it be said that a mere receipt given by a married woman to an executor or administrator for her legacy, &c., is to have the effect of binding her separate estate. The case of Pettit vs. Fretz's Executor, 9 C., 118, is not that of a simple release by a married woman to an administrator upon the receipt of her share, but of an agreement between her and another person, in which the administrator is directed to pay a portion of her share to that person coupled with a promise to indemnify the administrator against any loss for doing so. The agreement was not signed by the husband, and the Supreme Court held that it was not binding, on the ground that a married woman is not empowered by the Act of 1848 *to dispose of or charge* her separate estate by an instrument under seal to which her husband is not a party.

If Mrs. Gauff was not legally competent by the Act of 1848 to execute and deliver the receipt in question without her husband joining in it, and that she was only enabled to do so by the Act of 1856, then it is contended that the latter act is not applicable to this transaction for the reason that her distributive share was not paid in full to her in *money* as provided by the act. We are, however, of the opinion that by the Act of 1848, Mrs. Gauff was legally competent to execute and deliver

the receipt, and that she is bound by it, unless she can show fraud or want of consideration. The arrangement which she made with Kleppinger at the time the receipt was given that Kleppinger should retain so much of her share and apply it to the payment of her note, the delivery of the note to her and the payment of the balance in money, constituted the consideration of the receipt and was as effectual as if the money had been actually paid to her. Mrs. Gauff, being a married woman, was not bound to pay the note. It is now too late to interpose the plea of coverture, and assert that she did not know at the time that she was not legally liable. The reason for this salutary rule is well expressed by Sergeant J., in Ege vs. Koontz, 3 Barr, 113. "The general principle that a person who voluntarily pays money to another claiming is as a debt, may recover it back again when it turns out to have been paid by mistake, is recognized by our law, as the decided cases fully establish, only when the mistake is owing to misconception, or ignorance of fact. Where the party alleges a mistake of the law, the maxim applies, *ignorantia juris neminen excusat.* One person is not allowed gratuitously to alter the position of another and affect his right and liabilities, by voluntarily assuming to understand his own legal duty, and paying a claim on the footing of such assumption and then drawing it into question upon the allegation of a mistake of his duty. It would not only encourage negligence and rashness but might in many instances have an injurious operation on the rights of others, if permitted."

In this case Kleppinger, as assignee, would be greatly injured. He retained this money on the faith of Mrs. Gauff's assent and agreement to apply it to the payment of her note, charged himself with it in a subsequent account, and by the order and decree of this Court, paid it to the creditors of Kemmerer. It is, however, contended that the doctrine of estoppel is not applicable to the contracts or invalid acts of married women.

In this case the doctrine is not invoked against either her contract or invalid acts. Mrs. Gauff was legally competent to

give a receipt for her share and pay her note in the manner she did. She is presumed to have known the law that she was not legally liable on her note, but having paid it, Kleppinger as assignee was required to account for the proceeds to the creditors of Kemmerer. Having done what the law required and paid the money to Kemmerer's creditors by the order of the Court, it would be gross injustice to compel him to pay it back to Mrs. Gauff. But it is further contended that Kemmerer was but a surety for Mrs. Gauff's husband on his note to Roth, and as Kemmerer's estate only paid $490.30 to Roth, Kleppinger had no right to demand from Mrs. Gauff on her note more than that amount. That is undoubtedly true. But the depositions fail to show that Kleppinger knew what the consideration of the note of Mrs. Gauff to Kemmerer was. Even if he did know that circumstance would be immaterial. He held the note of Kemmerer against her, the validity of which she did not dispute. As he was entitled in good conscience to receive the entire principal and interest of the note, Mrs. Gauff can not recover back the excess over $490.30 either by an action at law or in this form of proceeding.

And now, November 1st, 1880, supplemental petition dismissed, the costs to be paid by the petitioner.

---

Catharine E. Gauff then appealed, complaining of the action of the Court in dismissing her petitions.

*Robert L. Cope, Esq.*, for appellant, cited Pettit vs. Fretz, 33 Pa., 118; Campbell's Estate, 80 Pa., 298; R. R. Co. vs. Burson, 61 Pa., 369; Ulp vs. Campbell, 19 Pa., 361; Haines vs. Ellis, 24 Pa., 255; Peck vs. Ward, 18 Pa., 506; Bond vs. Bunting, 78 Pa., 210; Buchanan vs. Buchanan, 46 Pa., 186; Darlington's Appeal, 86 Pa., 512; Whelen's Appeal, 70 Pa., 410; Wills' Appeal, 22 Pa., 332; Ege vs. Koontz, 3 Pa., 113; Light vs. Light, 21 Pa., 412; Quinn's Appeal, 6 W. N. C., 120; Glidden vs. Strupler, 52 Pa., 400; McClure vs. Douthitt, 6 Pa., 414.

*Wm. Mutchler, Esq.*, contra, cited Ege vs. Koontz, 3 Pa., 113.

· The Supreme Court affirmed the decree of the Common Pleas on May 2nd, 1881, in the following opinion, per

GREEN, J.:

Practically the only question in this case is a question of payment. The appellant, being a married woman, was a creditor of her brother, who had made an assignment for the benefit of creditors. She was entitled to a dividend from the assets in the hands of the assignee. The latter in paying her the amount of her dividend gave her part in cash and part in a note which she had given her brother. She was under no obligation to accept the note as part payment, as she had executed it during her coverture. But she chose to waive her defense of coverture and accepted the note as so much money, and she receipted to the assignee for the whole amount of her dividend, as she had a perfect right to do. Nearly four years later she applied to the Court below for a *fi. fa.* against the assignee to compel him to pay her in money the amount represented by the note. In the mean time the assignee had filed another account charging himself with the amount of her note which had thus been paid, and had paid out the fund to creditors to whom distribution had been made. In these circumstance the Court below very properly refused to award the *fi. fa.*, holding that it would be an act of gross injustice to the assignee to do so. The appellant herself testified that she understood at the time that the amount distributed to her was over $700, and that when she gave the receipt it was her intention to receipt for all the money the assignee paid to her, including the amount of the note which he held against her. While it is very true that a married woman is under no legal obligation to pay her promissory note, yet if she actually does pay it she has no right to recover back the money thus voluntarily paid to one who received it in good conscience, and might, therefore, lawfully keep it. If she was mistaken as to her legal right to refuse taking the note as payment it was a mistake of the law, which excuses no one ; Ege vs. Koontz, 3 Pa., 113.

　　　　Decree affirmed and appeal dismissed at the costs of the appelant.